IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

GEORGIE JESSUP MAULER,     *

    Plaintiff,     *

                                     Civil Action No. RDB-18-1445

    v.     *

GEORGE ARLOTTO, *et al.*,     *

    Defendants.     *

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## MEMORANDUM OPINION

Plaintiff Georgie Jessup Mauler ("Plaintiff" or "Mauler") brings this action against Defendants George Arlotto ("Arlotto"), Sarah Czach ("Czach"), and Doyle Batten ("Batten") (collectively, "Defendants"), alleging that she was unlawfully arrested on the Anne Arundel County Board of Education's property in retaliation for exercising her First Amendment right to free speech (Count I) and in violation of her Fourth and Fourteenth Amendment rights to be free from unreasonable search and seizure (Count II). (Compl., ECF No. 1.) Currently pending before this Court is the Defendants' Motion to Dismiss the Complaint for failure to state a claim. (ECF No. 7.) The submissions have been reviewed and no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2016). For the following reasons, Defendants' Motion to Dismiss (ECF No. 7) is GRANTED and Plaintiff's claims are DISMISSED WITH PREJUDICE.

### BACKGROUND

In ruling on a motion to dismiss, this Court "accept[s] as true all well-pleaded facts in a complaint and construe[s] them in the light most favorable to the plaintiff." *Wikimedia*

1

*Found. v. Nat'l Sec. Agency*, 857 F.3d 193, 208 (4th Cir. 2017) (citing *SD3, LLC v. Black & Decker (U.S.) Inc.*, 801 F.3d 412, 422 (4th Cir. 2015)). Plaintiff Georgie Jessup Mauler ("Plaintiff" or "Mauler"), a transgender female, began working for the Anne Arundel County Board of Education ("the Board") as a teacher's assistant in 1984. (*Id.* at ¶ 8.) She alleges that when she first began expressing her feminine identity at work in 1993, Board officials began openly harassing her and discriminating against her. (*Id.* at ¶ 9.) When she underwent a sex reassignment surgery in 1998, the harassment and discrimination intensified. (*Id.* at ¶ 10.) Despite what she contends was pervasive harassment, Mauler continued to work at the Anne Arundel County Board of Education for seventeen years, until her effective retirement on June 30, 2015. (*Id.* at ¶ 11.)

One week before her retirement, Mauler decided to have a "peaceful protest" at the Board's central office to protest "the Board's mistreatment of herself and all transgender individuals and to remonstrate against what she perceived to be the Board's waste of taxpayer money." (*Id.* at ¶ 12.) She asked the president of her union where groups normally held rallies or protests at the Board's central office and was told that they normally took place under the trees just off the sidewalk on the Board's property. (*Id.* at ¶¶ 17-18.) The spot is about seventy-five to one hundred feet from the Board's main entrance. (*Id.* at ¶ 29.)

On June 23, 2015, the morning of her protest, Mauler first went into the Board's Human Resources Department to retrieve an award. (*Id.* at ¶¶ 20-21.) She then went back to her car to retrieve some items for her protest. (*Id.* at ¶ 23.) Mauler alleges that as she was retrieving her items, she saw the Defendant Czach standing in the parking lot watching her along with two other individuals. (*Id.* at ¶ 24.) From where Czach was standing, Mauler

2

contends that Czach could see her guitar, coup stick, and sign saying "AACPS is transphobic." (*Id.* at ¶ 30.)

Around 10:30 a.m. on the morning of June 23, 2015, Mauler began singing her protest songs. (*Id.* at ¶ 32.) Before she sang her first song, she noticed that Czach and the two individuals were no longer outside. (*Id.* at ¶ 34.) She then sang three songs, during which she still did not observe anyone outside. (*Id.* at ¶ 37.) When she began singing her fourth song, Defendant Doyle Batten ("Batten"), the Board's Supervisor of School Security, approached her and ordered her to move off the Board's property to the public sidewalk or threatened that she would be arrested. (*Id.* at ¶ 38.) Mauler responded to Batten that his threat of arrest was improper because union protests had occurred there previously. (*Id.* at ¶ 41.) Batten then told her "let's see how dedicated you are to your cause" and walked away. (*Id.* at ¶ 42.)

Approximately three to five minutes later, while Mauler was singing her next song, two police officers with the Anne Arundel County Police Department arrived. (*Id.* at ¶ 45.) One of the police officers immediately ordered Mauler to put her hands behind her back and told her that she was being arrested for trespass. (*Id.* at ¶ 47.) When Mauler told the officer that she would obey a "lawful order to move," she alleges that Batten stated it was not an "option" for Ms. Mauler to move and he "wanted her arrested." (*Id.* at ¶¶ 48-49.) Mauler was arrested, and she alleges that Defendant Czach and other Board employees watched from the entryway of the Board. (*Id.* at ¶ 50.) Mauler was held at the police station for approximately one hour and charged with wanton trespass on private property, in violation of Section 6-403 of the Criminal Law Article of the Maryland Code. (*Id.* at ¶¶ 52-53.) Three

months later, the State's Attorney's Office for Anne Arundel County entered a *nolle prosequi*.[1] (*Id.* at ¶ 55.)

Almost three years after this one hour incident, on May 17, 2018, Mauler filed the instant action alleging, pursuant to 42 U.S.C. § 1983, that her arrest was in retaliation for exercising her First Amendment right to free speech and violated her Fourth and Fourteenth Amendment rights to be free from unreasonable search and seizure. (ECF No. 1.) She alleges that Czach and Batten "acted with palpable hostility in suppressing [her] expression of Free Speech and effectuating her unlawful arrest because she is a transgender woman who dared to protest the Board's mistreatment of transgender individuals" and that their actions were "in full view of their superiors, including [Defendant] Superintendent Arlotto." (*Id.* at ¶¶ 58-59.) On July 5, 2018, all three Defendants moved to dismiss the Plaintiff's claims. (ECF No. 7.)

**STANDARD OF REVIEW**

Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 12(b)(6) authorizes the dismissal of a complaint if it fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). The purpose of Rule 12(b)(6) is "to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006). While a complaint need not include "detailed factual allegations," it must set forth "enough factual matter (taken as true) to suggest" a cognizable

---

[1] An order of *nolle prosequi* signals the State's decision to discontinue and abandon a prosecution. *See Ward v. State,* 290 Md. 76, 81–83, 427 A.2d 1008 (Md. 1981).

4

cause of action. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In reviewing a Rule 12(b)(6) motion, a court "'must accept as true all of the factual allegations contained in the complaint'" and must "'draw all reasonable inferences [from those facts] in favor of the plaintiff.'" *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (citations omitted); *Hall v. DirectTV, LLC*, 846 F.3d 757, 765 (4th Cir. 2017). However, a court is not required to accept legal conclusions drawn from those facts. *Iqbal*, 556 U.S. at 678.

## ANALYSIS

Section 1983 authorizes a suit for damages against any individual "who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution." 42 U.S.C. § 1983. To state a claim under § 1983, a plaintiff must allege: "(1) a deprivation of a constitutional right or some right secured by the laws of the United States, and (2) that the deprivation was caused by a state actor." *Corral v. Montgomery County*, 4 F. Supp. 3d 739, 744-45 (D. Md. 2014) (citing *West v. Atkins,* 487 U.S. 42, 48, 108 S. Ct. 2250 (1988)). Plaintiff Mauler alleges that each of the three Defendants caused her illegal arrest both in retaliation against her for exercising her First Amendment right to free speech and in violation of her Fourth and Fourteenth Amendment rights to be free from unreasonable search and seizure.

Defendants Arlotto and Czach argue that Plaintiff's claims must be dismissed against them because they did not cause the alleged deprivation of Mauler's constitutional rights, specifically the arrest. On the other hand, Defendant Batten argues that "it must be assumed

5

that Defendant Batten reported []his interaction with Ms. Mauler to the officer," but that he did not cause an *illegal* arrest or cause her to be arrested in retaliation for exercising her First Amendment rights. This Court analyzes the defenses raised by Defendants Arlotto and Czach before turning to Defendant Batten.

I.  **Defendants Arlotto and Czach**

In order to state her First Amendment retaliatory arrest claim and her Fourth and Fourteenth Amendment unlawful arrest claim, Mauler must allege that each individual in some way caused her arrest. As to Defendant George Arlotto, the Superintendent of the Anne Arundel County Board of Education, the Plaintiff's Complaint is completely devoid of any factual allegations concerning his actions on June 23, 2015. Mauler does not allege that she saw Arlotto on that day, or that Arlotto interacted with the other Defendants or the Anne Arundel County police officers. Rather, Mauler generally asserts that Czach and Batten's conduct was "in full view of their superiors, including Superintendent Arlotto" and Arlotto "failed to prevent" Czach and Batten "from prohibiting or interfering with Ms. Mauler's exercise of her First Amendment rights." (ECF No. 1 at ¶¶ 59, 66.) To the extent the Plaintiff is attempting to allege a § 1983 claim against Arlotto for supervisory liability, she has not alleged sufficient facts to sustain such a claim.[2] Therefore, the Plaintiff does not plausibly allege that Arlotto in any way caused her arrest on June 23, 2015, and Defendant Arlotto is DISMISSED WITH PREJUDICE as a party in this proceeding.

---

[2] *See Wilkins v. Montgomery*, 751 F.3d 214, 226 (4th Cir. 2014) ("In order to succeed on a § 1983 claim for supervisory liability, a plaintiff must show: (1) that the supervisor had actual or constructive knowledge that h[er] subordinate was engaged in conduct that posed 'a pervasive and unreasonable risk' of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show 'deliberate indifference to or tacit authorization of the alleged offensive practices,'; and (3) that there was an 'affirmative causal link' between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff." (citation omitted)).

Mauler's allegations are also inadequate to plausibly allege that Sarah Czach, Senior Manager of Investigations, caused her arrest on June 23, 2015. Mauler alleges that while she was retrieving items from her car prior to the protest, she saw Czach and two other individuals standing in the parking lot watching her. (ECF No. 1 at ¶ 24.) She did not see Czach or the other individuals earlier that morning, and they were no longer in the parking lot when she began singing. (*Id.* at ¶¶ 25, 34.) Three songs later, the third Defendant, Batten, told Mauler to move to the sidewalk. (*Id.* at ¶ 38.) Approximately three to five minutes after she refused to follow Batten's order, she was arrested by Anne Arundel County police. (*Id.* at ¶¶ 46-50.) Although Mauler alleges that Czach was present and observed her on June 23, 2015, these allegations are insufficient for this Court to reasonably infer that Czach spoke with the Anne Arundel County police or in any way caused Mauler's arrest. Therefore, her claims against Defendant Czach must also fail and Czach is DISMISSED WITH PREJUDICE as a party in this proceeding.

**II.     Defendant Batten**

With respect to Defendant Batten, he asserts that "it must be assumed that [he] reported []his interaction with Ms. Mauler to the officer." (ECF No. 7-1 at 6.) Defendant Batten asserts, however, that he cannot have been responsible for causing Mauler's allegedly *illegal* arrest because the information he gave the Anne Arundel County police officers gave them probable cause to arrest Plaintiff for trespassing on public grounds under Section 6-409 of the Criminal Law Article of the Maryland Code.

The Plaintiff acknowledges in her Complaint that she was singing on the Board's property during regular business hours. (ECF No. 1 at ¶¶ 21-22, 28.) Under Section 6-409 of

7

the Criminal Law Article of the Maryland Code:

> (b) A person may not refuse or fail to leave a public building or grounds, or a specific part of a public building or grounds, during regular business hours if:
>  (1) the surrounding circumstances would indicate to a reasonable person that the person who refuses or fails to leave:
>   (i) has no apparent lawful business to pursue at the public building or grounds; or
>   (ii) is acting in a manner disruptive of and disturbing to the conduct of normal business by the government unit that owns, operates, or maintains the public building or grounds; and
>  (2) an authorized employee of the government unit asks the person to leave.

Md. Code Ann., Crim. Law § 6-409. Mauler was obviously not pursuing a business related to administering public education to Anne Arundel County school children. Rather, she chose one week before her retirement to sing on the Board property with a guitar, coup stick, and sign saying "AACPS is transphobic." (ECF No. 1 at ¶ 30.) While she was singing, Defendant Batten, the Board's Supervisor of School Security, approached her and asked her to leave the Board's property and go to a public sidewalk. (ECF No. 1 at ¶ 38.) Moreover, she was clearly permitted to continue her protest if she moved to the sidewalk. (*Id.*) When she refused to follow Batten's instruction, it is assumed that Batten called the Anne Arundel County police. When the officers arrived, they had probable cause to believe that Mauler was violating Maryland trespass law by refusing to leave the Board property.[3] Accordingly, Batten did not

---

[3] Although at the time of arrest Plaintiff was charged with violating Section 6-403 of the Criminal Law Article of the Maryland Code, trespassing on private property, a police officer's failure to cite the correct code section does not make an arrest unlawful as long as there was otherwise probable cause for the arrest. *See United States v. Williams*, 740 F.3d 308, 312 (4th Cir. 2014) ("That the traffic citation listed an incorrect, albeit closely related, provision of Maryland's traffic laws does not alter the fact that, at the time [the officer] stopped [d]efendant, the Fourth Amendment's requirement that the stop 'must be justified by probable cause or a reasonable suspicion, based on specific and articulable facts, of unlawful conduct' had been met."); *see also United States v. Mobley*, No. 3:14-CR-122, 2014 WL 6791425, at *7 (E.D. Va. Nov. 25, 2014) ("A police officer's reliance on an incorrect statute does not negate probable cause if the conduct supporting probable

cause an illegal arrest, and Plaintiff's First Amendment retaliatory arrest claim and Fourth and Fourteenth Amendment unlawful arrest claim both must fail against Defendant Batten.[4] Accordingly, Defendant Batten is DISMISSED WITH PREJUDICE as a party in this proceeding and all of Plaintiff's claims are DISMISSED WITH PREJUDICE.

## CONCLUSION

For the reasons stated above, Defendants' Motion to Dismiss (ECF No. 7) is GRANTED and Plaintiff's claims are DISMISSED WITH PREJUDICE.

A separate order follows.


Dated: October 11, 2018                                  /s/

                                                                                                                              Richard D. Bennett
                                                                                                                              United States District Judge

---

cause is actually illegal under another statute." (citing *Williams*, 740 F.3d at 312)).

[4] Although the United States Supreme Court in *Lozman v. City of Rivera Beach, Fl.*, 138 S. Ct. 1945 (2018) recently held that the existence of probable cause did not bar the plaintiff's claim against the city that it retaliated against him for his criticisms of city officials, the circumstances of that case included a retaliation claim against a municipality for an arrest made pursuant to an official municipal policy. The Supreme Court left open the question of whether the existence of probable cause is a defense to First Amendment retaliatory arrest claims asserted against individuals. Accordingly, the current binding precedent in this Circuit is that probable cause for an arrest defeats a First Amendment retaliatory arrest claim. *Pegg v. Herrnberger*, 845 F.3d 112, 119 (4th Cir. 2017) ("The probable cause inherent in [the plaintiff's] violation of § 17C–16–9 also defeats his First Amendment retaliatory arrest claim. The Supreme Court 'has never recognized a First Amendment right to be free from a retaliatory arrest that is supported by probable cause.' *Reichle v. Howards*, ––– U.S. –––, 132 S.Ct. 2088, 2093, (2012). Since the *Reichle* decision, no such right has been recognized, so the *Reichle* principle is fully controlling here.").